

CLERK'S OFFICE
A TRUE COPY
May 09, 2023
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>information associated with SnapChat accounts<br>associated and identified with username "snoopallday"<br>stored at Snap, Inc. (See Attachments) | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 23 MJ 83

**Matter No.: 2023R00086**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A. Over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 249 | Hate Crime Acts; |

The application is based on these facts:

See attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Erin Lucker, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date: ___5/9/2023___

City and state: ___Milwaukee, WI___

_____
*Judge's signature*

Hon. William E. Duffin U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Erin Lucker, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703 (c)(I)(A) to require Snap, Inc. to disclose to the government records and other information, including the contents of communications, associated with SnapChat username (snoop_allday) that is stored at its premises owned, maintained, controlled or operated by Snap, Inc., a company headquartered at 2772 Donald Douglas Loop North, Santa Monica, California. The information to be disclosed by Snap, Inc. and searched by the government is described in the following paragraphs and in Attachments A and B.

2. I am a Special Agent for the Federal Bureau of Investigation ("FBI"), where I have been employed since November 2016. I am currently assigned to an FBI squad which investigates civil rights crimes and public corruption crimes. I was previously assigned to the FBI Milwaukee Violent Crimes Task Force which involved investigations of violent crimes, to include kidnappings, extortions, murder for hire, and bank and armored car robberies. During my tenure with the FBI, I have participated in all aspects of investigations, including executing search warrants involving, among other things, the search and seizure of computers, computer equipment, software, and electronically stored information. Through my experience and training, I have become familiar with activities of individuals engaged in illegal activities, to include their techniques, methods, language, and terms. During my career, my investigations have included the use of various surveillance techniques and the execution of numerous search and seizure warrants, including for computers and cellular telephones.

1

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies, all of whom I believe to be truthful and reliable. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant. It does not set forth all of my knowledge, or the knowledge of others, about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, I submit that there is probable cause to believe that the information described in Attachment A contains evidence of violations of 18 U.S.C. § 249, as described in Attachment B.

## JURISDICTION

5. This court has jurisdiction to issue the requested warrant because it is a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§2703(a), (b)(I)(A), & (c)(I)(A). Specifically, the Court is "a district court of the United States … that has jurisdiction over the offense being investigated." 18 U.S.C § 2711(3)(A)(i).

## PROBABLE CAUSE

6. On Sunday, February 26, 2023, witness G.V. (DOB 9/20/1999) was sleeping at 5301 N. 29th Street, Apartment 7, Milwaukee, Wisconsin and woke up at approximately 5:33 a.m. after hearing a loud bang that could have been a gunshot. Between 8:15 a.m. and 8:30 a.m., G.V. smelled gas in the apartment and checked the stove to ensure there was not a gas leak. At approximately 9:15 a.m., G.V. observed light smoke in the apartment and contacted 911.

7. On Sunday, February 26, 2023, at approximately 9:21 a.m., Milwaukee Fire Department ("MFD") was dispatched to 5301 N. 29th Street, Milwaukee, Wisconsin, regarding a structure fire at that location. Upon arrival, MFD observed that Apartment 5 was on actively on fire and forced entry. After the fire was extinguished and the apartment was vented, MFD discovered a deceased

victim, who was identified as C.H. (DOB 6/14/1991). C.H. was a transgender female who was assigned male at birth.

8. Milwaukee Police Department ("MPD") responded to the scene and conducted a scene investigation. Located in the residence was a red, plastic gas can with gasoline inside. In addition, one (1) 9mm cartridge was recovered in the bathroom of the residence. A red, 2019 Toyota Camry, Wisconsin license plate ARZ2792, registered to C.H., was recovered from the rear parking lot of 5301 N. 29th Street and towed to the City of Milwaukee Tow Lot for evidence processing.

9. A review of surveillance video captured an unidentified male (UM-1) walking south across the rear parking lot of 5277 S. 29th Street, Milwaukee, Wisconsin, at approximately 8:45 a.m. UM-1 continued behind the garage of 5266 N. Teutonia Avenue, Milwaukee, Wisconsin. Pole camera video then captured UM-1 walking on the driveway of 5262 N. Teutonia Avenue, Milwaukee, Wisconsin, and crossing Teutonia Avenue to the west side of the street. Additional pole camera video showed UM-1 walking south to Villard Avenue towards McDonalds, 5191 N. Teutonia Avenue, Milwaukee, Wisconsin, and then continuing to walk south on Teutonia Avenue, out of view of surveillance video and pole cameras.

10. In the surveillance and pole camera videos, UM-1 was observed wearing a black vest with a hood over a gray sweatshirt, light colored sweatpants with a dark colored stripe from the waist to the knees. UM-1 had glasses on top of his head and had his hair braided toward the back with short or shaved hair on the sides.

11. C.H.'s 2019 Toyota Camry was processed for evidence and latent prints were recovered from a Lysol wipes container located on the front passenger floorboard. An examination of the latent prints revealed a match to the left ring finger of CORDELL M. HOWZE (DOB 10/26/1989).

3

12. MPD officers interviewed P.S. (DOB 12/5/1996), who advised that HOWZE spent the night at P.S.'s home in Neenah, Wisconsin on Friday, February 24, 2023. On Saturday, February 25, 2023, P.S. gave HOWZE a ride to Milwaukee, Wisconsin, and dropped HOWZE off on 83rd Street at approximately 10:30 a.m. At this time, HOWZE was wearing light colored cargo pants and a dark jacket with grey sleeves. P.S. was shown surveillance still images of UM-1 from McDonalds, 5191 N. Teutonia Avenue, Milwaukee, Wisconsin. P.S. advised UM-1 looked like HOWZE, and the clothing UM-1 was wearing was consistent with clothes HOWZE was wearing when P.S. drove HOWZE to Milwaukee, Wisconsin, on Saturday, February 25, 2023.

13. On Monday, February 27, 2023, P.S.'s wife contacted P.S. and advised HOWZE was at their home in Neenah, Wisconsin. P.S. responded to his home and observed HOWZE in the living room with a black, red dot sight handgun with an extended magazine and green laser beam. HOWZE showed P.S. videos on HOWZE'S cell phone, which P.S. identified as HOWZE's white Apple iPhone. In the video, P.S. heard HOWZE'S voice, and in addition, P.S. recognized HOWZE'S face in the reflection of an aquarium. The video showed a deceased female wearing a t-shirt and underwear. There was an injury to the back of the female's head, and there was blood on the floor and pillows. In the video, HOWZE pointed a gun at an aquarium and pointed the green laser beam at a snake in the aquarium. P.S. observed that the video was shot on the second floor of a building. In addition, P.S. observed a yellow house through the window.

14. P.S.'s description of the video, to include the deceased woman, location of the injury, and the aquarium, was consistent with the February 26, 2023 crime scene at 5301 N. 29th Street, Apartment 5, Milwaukee, Wisconsin.

15. HOWZE told P.S. that HOWZE "caught a body of a disgusting ass transgender." HOWZE made comments that he wanted to kill a female that drove a red Dodge Caravan, and a

male that kept contacting HOWZE about a vehicle HOWZE stole. At this time, P.S. told HOWZE to leave P.S.'s home. P.S. observed HOWZE had two cell phones; P.S. identified these cell phones as a red Apple iPhone with telephone number 920-205-4720, and a white Apple iPhone with telephone number 414-581-2266. HOWZE sent P.S. the same video via text message from telephone number 414-581-2266. P.S. deleted the video because P.S. was disgusted by the content.

16. On February 28, 2023, HOWZE was observed exiting an apartment building in Neenah, Wisconsin, and entering a 2019 White Chevrolet Trax, Wisconsin license plate AEZ6823, registered to R.H. (DOB 1/12/1968), which is HOWZE's mother. City of Neenah Police Department ("NPD") Officers attempted to conduct a vehicle stop of HOWZE, but HOWZE continued to drive away. During the pursuit, officers observed HOWZE throw items from the Chevrolet Trax, which included a blue Nike duffle bag; a clear, plastic bag containing unfired, 9mm cartridges; a black Sig Sauer P320 9mm semi-automatic handgun, serial number 58B229642, with a green laser attachment; and a white iPhone (SUBJECT DEVICE). After the pursuit, HOWZE was taken into custody in Menasha, Wisconsin. The items thrown from the Chevrolet Trax were collected by law enforcement, including the white iPhone (SUBJECT DEVICE), which was placed in evidence at MPD under Inventory #23006928, Item #1. The FBI took custody of the SUBJECT DEVICE on March 2, 2023, which is now in a secured evidence area of the FBI Office in the Eastern District of Wisconsin. The SUBJECT DEVICE is believed to be the same white Apple iPhone that was used by HOWZE to show P.S. the video of the deceased woman.

17. On March 1, 2023, HOWZE'S mother, R.H., was interviewed by MPD detectives. R.H. advised she gave HOWZE a ride to Dunham's, 2550 S. 108th Street, West Allis, Wisconsin on Saturday, February 25, 2023, where HOWZE purchased a box of 9mm 100 gr FMJ lead ammunition. R.H. provided detectives with the receipt from Dunham's, which showed the

purchase was made on February 25, 2023, at approximately 4:05 p.m. R.H. was aware that HOWZE possessed a handgun with a green laser.

18. R.H. advised she and HOWZE went to an AT&T store on Saturday, February 25, 2023, in order to purchase new iPhones. R.H. identified HOWZE'S new telephone number as 414-581-2266.

19. R.H. was shown surveillance still images of UM-1 from the area of 5301 N. 29th Street, Milwaukee, Wisconsin. R.H. identified UM-1 as being HOWZE and advised the clothing UM-1 wore was consistent with the clothing HOWZE wore when he left R.H.'s home on Saturday, February 25, 2023 and Sunday, February 26, 2023.

20. On March 16, 2023, a search warrant authorizing the forensic examination of the white Apple iPhone (MPD Inventory #23006928, Item #1) was executed. The extraction revealed the device's MSISDN was 414-581-2266 and the Apple ID was cordell.howze@icloud.com.

21. The extraction included the device's web history, which showed the device accessed https://transx.com.listcrawler.eu. Per listcrawler.eu, the website is an escort advertisement list-viewer that displays daily classified advertisements from a variety of sources, to include megapersonals.eu. The escorts advertised in the transx.com.listcrawler.eu section was described as "trans and shemale escorts." The device accessed https://transx.com.listcrawler.eu/post/escorts/usa/wisconsin/milwaukee/116573863 ("Post 116573863).

22. On April 11, 2023, investigators accessed "Post 116573863". The advertisement had a time stamp of "Sat 25 Feb 2023 11:07 PM" and noted the escort was "fully functional." The contact telephone number for the escort was listed as 414-349-5994. The escort's location was listed as Highway 41 and College Avenue in Milwaukee, Wisconsin. Photographs in the advertisement

matched known photographs of C.H. On February 27, 2023, A.G., a friend of C.H., was interviewed by MPD detectives. A.G. identified C.H.'s telephone number as 414-349-5994. According to A.G., C.H. was an escort that posted advertisements on Facebook and megapersonals.eu.

23. The iPhone extraction included a screenshot of a text message from telephone number 414-349-5994, known to be used by C.H. C.H. texted "I'm here", "U on the left or the right side", "?", and "I'm here."

24. The iPhone extraction included videos saved on the device. A one minute and one second video (file name IMG_0011.MOV) depicted a female in a residence, lying on the floor with a blanket partially covering her body and a pillow on her head. The individual taking the video held a firearm with a green laser in their right hand. The individual pointed the laser at the female on the floor. A voice says: "Ya'll wanna see a dead body?" and the blanket is removed from the female. The pillow is moved, revealing a gunshot wound on the female's head. The handgun with the green laser is then pointed at the female's head. A voice says: "This is just the beginning. Prime example, my goofy ass n*****, crossing the line by trying to be somebody he really isn't."

25. A 41 second video (file name IMG_0009.MOV) depicted an individual walking around a residence. The individual walked into the bathroom, where he was observed in the bathroom mirror. The individual took the magazine out of a handgun and locked the slide back. The individual observed in the mirror matches known photographs of HOWZE.

26. A 10 second video (file name IMG_0010.MOV) depicted a female in a residence, lying on the floor with a blanket partially covering her body and a pillow on her head. The individual

7

taking the video held a firearm with a green laser in their right hand. The individual pointed the laser at the female on the floor.

27. The iPhone extraction included text messages between telephone number 414-581-2266, known to be used by HOWZE, and P.S. On February 27, 2023, at approximately 8:05 p.m., HOWZE texted video IMG_0010.MOV to P.S. On February 28, 2023 at approximately 10:58 a.m. video IMG_0012.MOV was texted from HOWZE to P.S.

<u>**HOWZE'S USE OF SNAPCHAT**</u>

28. The iPhone extraction included February 2023 SnapChat messages between usernames snoopallday23 and lovie1674. SnapChat is an Internet-based mobile application that provides a way to share photos, videos and messages. The pictures and videos shared are available to the receiver for a short time before it becomes inaccessible. On February 26, 2023, username snoopallday23 initiated a chat with username lovie1674. Snoopallday23 asked if lovie1674 was "free tonight." Lovie1674 responded "$300." Snoopallday23 said "perfect" and "send info."

29. The extraction of the iPhone revealed the device's MSISDN was 414-581-2266. Both P.S. and R.H. identified HOWZE'S new telephone number as 414-581-2266. In addition, the extraction revealed the device accessed SnapChat, and communicated using the username "snoopallday23".

30. On April 13, 2023, a preservation request under 18 U.S.C. § 2703(f) was sent to Snap, Inc., regarding SnapChat username snoopallday23.

31. On April 18, 2023, a subpoena was served on Snap, Inc., requesting subscriber information associated with known telephone numbers for HOWZE. On May 1, 2023, Snap, Inc., provided a response to the subpoena, and identified a second SnapChat account with telephone

number 920-205-4720 and associated with SnapChat username "snoop_allday". The username snoop_allday was last active on February 28, 2023.

32. On May 1, 2023, a preservation request under 18 U.S.C. § 2703(f) was sent to Snap, Inc., regarding SnapChat username snoop_allday.

## INFORMATION REGARDING SNAPCHAT

33. Snapchat is an Internet-based mobile application made by Snap Inc. and available through the iPhone Application Store and Google Play. The application provides a way to share moments with photos, videos and text. "Snaps" is a feature enabling users to take a picture or video of themselves in real time and share them with another Snapchat user. Unless the sender or recipient chooses to save the picture or video, the message will be deleted from their devices upon its successful sending or opening. Users are able to save the pictures or videos to their devices or to "Memories", which is Snapchat's cloud-storage service.

34. According to the most recent Snapchat Law Enforcement Guide, "Snapchat retains logs for the last 30 days of Snaps sent and received, for 24 hours of posted Stories, and for any unopened Chats or those saved by a sender or recipient. The logs contain meta-data about the Snaps, Stories, and Chats, but not the content". Further, the last part of the "Content" section of the Guide states, "A federal or state search warrant is required for requests that include message content", indicating that such a request is possible. Subsequently, it is reasonable to assume some, if not all, of the content contained in the Snaps and Chats is accessible via a valid search warrant.

35. "Stories" is a feature allowing Snapchat users to attach pictures or videos to their "Stories" which can be viewed for up to 24 hours. "Stories" can also be saved in "Memories". A user can also type messages, send pictures, videos, audio notes, and video notes to friends within the Snapchat application using the "chat" feature. A user sends a "chat" message to a friend, and

9

once it is viewed by both parties, and both parties swipe away the chat screen, the message will be cleared. Within the Snapchat application itself, a user can opt to save part of the "chat" by tapping on the message that they want to keep. The user can clear the message by tapping it again.

36. Snapchat also provides users with the ability to video chat with each other via the application.

37. Snapchat users may create a list of Friends by which they can identify other Snapchat users for the purposes of sending and receiving information. Users may search for and add Friends by a number of methods, including username, the user's cellphone address book and other methods allowed by the application.

38. While a Snapchat communication may disappear, the record of who sent it and when still exists. Snap, Inc. (Snapchat) records and retains information that is roughly analogous to the call detail records maintained by telecommunications companies. This includes the date, time, sender, and recipient of a snap. Additionally, Snapchat stores the number of messages exchanged, information concerning which users most communicated with a specific account, and a particular message's status, including if and when the message was opened and whether the receiver used the native screen capture function of his device to take a picture of the snap before it disappeared (screenshot notifications).

39. Snap, Inc. (Snapchat) asks users to provide basic contact and personal identifying information to include date of birth. When a user creates an account, they make a unique Snapchat username. This is the name visible to other Snapchat users. An e-mail address is required to register a Snapchat account and a new user must also provide a mobile phone number. This phone number is verified during the registration process. Snapchat sends an activation code which must be entered before proceeding with the registration step. However, a user may elect to bypass

entering a phone number, so a phone number may not always be present in the user's account. Snap, Inc. (Snapchat) also retains the account creation date, the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and experience, I know that even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

40. Snap, Inc. (Snapchat) stores device information such as the model, operating system, operating system version, mobile device phone number, and mobile network information of devices used in conjunction with the service. They also collect unique device identifiers such as the Media Access Control (MAC) address and the International Mobile Equipment Identifier (IMEI) or Mobile Equipment Identifier (MEID) of devices used to access Snapchat. In the event the Snapchat user's application crashes, the company also collects a list of other installed applications on the device to detect any potential software conflicts.

41. In my training and experience, in some cases, account users will communicate directly with an online service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the

11

crimes under investigation because the information can be used to identify the account's user or users.

42. As explained herein, information stored in connection with a Snapchat account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the investigating officials to establish and prove each offense-element, or, alternatively, to exclude the innocent from further suspicion. From my training and experience, I know that the information stored in connection with a Snapchat account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, sent and received snaps (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the online service provider can show how and when the account was accessed or used. For example, providers typically log the IP addresses from which users access the account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the criminal activity under investigation. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video uploaded). Finally, stored electronic data may provide relevant insight into the account owner's state of mind as it relates to the offense under investigation. For example, information in an account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

43. In general, providers like Snap Inc. ask each of their subscribers to provide certain personal identifying information when registering for an account. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, e-mail addresses, and, for paying subscribers, a means and source of payment (including any credit or bank account number).

44. Providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account, and other log files that reflect usage of the account. In addition, providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

45. In some cases, account users will communicate directly with a provider about issues relating to their account, such as technical problems, or complaints from other users. Providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

46. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(I)(A) and 2703(c)(I)(A), by using the warrant to require Apple to disclose to the government copies of the records and other information (including

the content of communications and stored data) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## **CONCLUSION**

47. Based on the forgoing, I request that the Court issue the proposed search warrant. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Snap, Inc. Because the warrant will be served on Snapchat, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

14

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with SnapChat accounts associated and identified with username "**snoop_allday**" that is stored at premises owned, maintained, controlled, or operated by Snap, Inc., a company headquartered at 2772 Donald Douglas Loop North, Santa Monica, California 90405.

# ATTACHMENT B

## Particular Things to be Seized

**I.**     **Information to be disclosed by Snap, Inc. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Snap, Inc., regardless of whether such information is located within or outside the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Provider is required to disclose the following information, from January 1, 2021 – to the present, to the government for each account or identifier listed in Attachment A:

    a. The contents of any available messages or other communication associated with username "**snoop_allday**" (the "Account") (including, but not limited to snaps, screenshot notifications, chats, videos, Stories, Memories, attachments, draft messages, posts, "friend" requests, recordings, images, or communications of any kind sent to and from the Account, including stored or preserved copies thereof), and related transactional records for all PROVIDER services used by an Account user, including the source and destination addresses and all Internet Protocol ("IP") addresses associated with each communication, the date and time at which each message or other communication was sent, and the size and length of each message or other communication;

    b. All photos and videos uploaded by the Account, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

    c. Basic subscriber records and login history, including all records or other information regarding the identification of the Account, to include full name, physical address,

16

telephone numbers, birthdate, security questions and passwords, and other personal identifying information, records of session times and durations, the date on which the Account was created, the length of service, types of services utilized by the Account, the IP address used to register the Account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, means and source of payment (including any credit or bank account number), and any account(s) linked by machine cookies (meaning all users that logged into Snapchat by the same machine as the Account);

d. All records or other information related to the Account, including address books, contact and "friend" lists; profile information; subscriptions, location settings, and privacy settings;

e. All records pertaining to communications between Snap, Inc. (Snapchat) and any person regarding the Account, including contacts with support services and records of actions taken;

f. All records pertaining to devices associated with the Account and software used to create and access the Account, including device serial numbers, instrument numbers, model types/numbers, International Mobile Equipment Identities ("IMEI"), Mobile Equipment Identifiers ("MEID"), Global Unique Identifiers ("GUID"), Electronic Serial Numbers ("ESN"), Android Device IDs, phone numbers, Media Access Control ("MAC") addresses, operating system information, browser information, mobile network information, information regarding cookies and similar technologies, and any other unique identifiers that would assist in identifying any such device(s); and

17

g. Information about any complaint, alert, or other indication of malware, fraud, or terms of service violation related to the Account or associated user(s), including any memoranda, correspondence, investigation files, or records of meetings or discussions about the Account or associated user(s) (but not including confidential communications with legal counsel)

h. Snaps (logs, including sender, recipient, date and time, concerning the previous Snaps, sent to or from the Snapchat account with the Account;

i. Types of service utilized by the user;

j. All records or other information stored by an individual using the account, including Chats, Stores, pictures, videos, or other content stored within the user's Memories feature; and

k. All records pertaining to communications between Snap, Inc., and any person regarding the account, including contacts with support services and records of actions taken.

Snapchat is hereby ordered to disclose the above information to the government within 10 days of issuance of this warrant.

**II.     Information to be seized by the government**

All information described above in Section I that constitutes evidence and/or instrumentalities of violation of 18 U.S.C. § 249 involving Cordell M. Howze and occurring after January 1, 2021, including, for each account identifier listed on Attachment A, information pertaining to the following matters:

(a) Information that constitutes evidence of the identification or location of the user(s) of the Account;

18

(b) Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the Account about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

(c) Information that constitutes evidence indicating the Account user's state of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation;

(d) Information that constitutes evidence concerning how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the Account user;

(e) Any information related to possession of firearms (including photographs, text messages, emails, or any other communication information);

(f) Any information regarding biases or hate regarding sexual orientation;

(g) Any information recording the target's schedule or travel between January 1, 2021 to the present;

(h) Any web search information related to the offenses described above;

(i) Any communications Snaps, Chats, Stores, pictures or videos between the subject and others regarding the offenses described above;

(j) Any photographs or videos regarding the offenses described above; and

(k) Records relating to who communicated with the account

19

This warrant authorizes a review of electronically stored information, communications, and other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☑ Original

**CLERK'S OFFICE**
**A TRUE COPY**
May 09, 2023
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| In the Matter of the Search of | ) |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| information associated with SnapChat accounts associated and identified with username "snoopallday" stored at Snap, Inc. (See Attachments) | ) |

Case No.  23   MJ   83

**Matter No.: 2023R00086**

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:
See Attachment A. Over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:
See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before ___5/23/2023___ *(not to exceed 14 days)*
❑ in the daytime 6:00 a.m. to 10:00 p.m.  ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. William E. Duffin_____ .
*(United States Magistrate Judge)*

☑ ~~Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.~~
~~§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose~~
~~property, will be searched or seized~~ *(check the appropriate box)*
❑ ~~for _____ days~~ *(not to exceed 30)*  ❑ ~~until, the facts justifying, the later specific date of~~ _____ .

Date and time issued:   ___5/9/2023 at 9:39 AM___        *William E. Duffin*
                                                                          *Judge's signature*

City and state:   ___Milwaukee, WI___        Hon. William E. Duffin, U.S. Magistrate Judge
                                                                          *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with SnapChat accounts associated and identified with username "**snoop_allday**" that is stored at premises owned, maintained, controlled, or operated by Snap, Inc., a company headquartered at 2772 Donald Douglas Loop North, Santa Monica, California 90405.

# ATTACHMENT B

## Particular Things to be Seized

## I.     Information to be disclosed by Snap, Inc. (the "Provider")

To the extent that the information described in Attachment A is within the possession, custody, or control of Snap, Inc., regardless of whether such information is located within or outside the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Provider is required to disclose the following information, from January 1, 2021 – to the present, to the government for each account or identifier listed in Attachment A:

    a.   The contents of any available messages or other communication associated with username "**snoop_allday**" (the "Account") (including, but not limited to snaps, screenshot notifications, chats, videos, Stories, Memories, attachments, draft messages, posts, "friend" requests, recordings, images, or communications of any kind sent to and from the Account, including stored or preserved copies thereof), and related transactional records for all PROVIDER services used by an Account user, including the source and destination addresses and all Internet Protocol ("IP") addresses associated with each communication, the date and time at which each message or other communication was sent, and the size and length of each message or other communication;

    b.   All photos and videos uploaded by the Account, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

    c.   Basic subscriber records and login history, including all records or other information regarding the identification of the Account, to include full name, physical address,

16

telephone numbers, birthdate, security questions and passwords, and other personal identifying information, records of session times and durations, the date on which the Account was created, the length of service, types of services utilized by the Account, the IP address used to register the Account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, means and source of payment (including any credit or bank account number), and any account(s) linked by machine cookies (meaning all users that logged into Snapchat by the same machine as the Account);

d.  All records or other information related to the Account, including address books, contact and "friend" lists; profile information; subscriptions, location settings, and privacy settings;

e.  All records pertaining to communications between Snap, Inc. (Snapchat) and any person regarding the Account, including contacts with support services and records of actions taken;

f.  All records pertaining to devices associated with the Account and software used to create and access the Account, including device serial numbers, instrument numbers, model types/numbers, International Mobile Equipment Identities ("IMEI"), Mobile Equipment Identifiers ("MEID"), Global Unique Identifiers ("GUID"), Electronic Serial Numbers ("ESN"), Android Device IDs, phone numbers, Media Access Control ("MAC") addresses, operating system information, browser information, mobile network information, information regarding cookies and similar technologies, and any other unique identifiers that would assist in identifying any such device(s); and

17

g. Information about any complaint, alert, or other indication of malware, fraud, or terms of service violation related to the Account or associated user(s), including any memoranda, correspondence, investigation files, or records of meetings or discussions about the Account or associated user(s) (but not including confidential communications with legal counsel)

h. Snaps (logs, including sender, recipient, date and time, concerning the previous Snaps, sent to or from the Snapchat account with the Account;

i. Types of service utilized by the user;

j. All records or other information stored by an individual using the account, including Chats, Stores, pictures, videos, or other content stored within the user's Memories feature; and

k. All records pertaining to communications between Snap, Inc., and any person regarding the account, including contacts with support services and records of actions taken.

Snapchat is hereby ordered to disclose the above information to the government within 10 days of issuance of this warrant.

**II.    Information to be seized by the government**

All information described above in Section I that constitutes evidence and/or instrumentalities of violation of 18 U.S.C. § 249 involving Cordell M. Howze and occurring after January 1, 2021, including, for each account identifier listed on Attachment A, information pertaining to the following matters:

(a) Information that constitutes evidence of the identification or location of the user(s) of the Account;

18

(b) Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the Account about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

(c) Information that constitutes evidence indicating the Account user's state of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation;

(d) Information that constitutes evidence concerning how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the Account user;

(e) Any information related to possession of firearms (including photographs, text messages, emails, or any other communication information);

(f) Any information regarding biases or hate regarding sexual orientation;

(g) Any information recording the target's schedule or travel between January 1, 2021 to the present;

(h) Any web search information related to the offenses described above;

(i) Any communications Snaps, Chats, Stores, pictures or videos between the subject and others regarding the offenses described above;

(j) Any photographs or videos regarding the offenses described above; and

(k) Records relating to who communicated with the account

19

This warrant authorizes a review of electronically stored information, communications, and other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.